

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

September 10, 1947

Hon. E. V. Spence, Chairman
Board of Water Engineers
302 West 15th Street
Austin, Texas                    Opinion No. V-372

                    Re:  Sale of stored waters
                         by Brazos River Conser-
                         vation and Reclamation
                         District beyond the
                         Brazos watershed

Dear Sir:

        Your letter of July 25, 1947, raises the fol-
lowing question for our opinion:

        "Does the Brazos River Conservation and
        Reclamation District have the power to
        sell, deliver or contract to deliver
        stored water outside the Brazos River
        watershed?  Has our Board any function
        in this regard?"

        The Brazos River Conservation and Reclamation
District was created, Acts 1929, 41st Legislature, 2nd
C. S., Spec. L., page 22, Ch. 13, as amended.  Title 128,
ch. 8, note V.C.S.  Its boundaries are defined by a metes
and bounds description of the watershed of the Brazos
River except for the counties of Freestone, Leon, and
Madison (as amended Acts 1931, 1st C.S., Ch. 5, Sec. 1).
Its powers, in so far as they touch on the question pre-
sented, are set out in Sections 2 and 3 of the Act.  Sec-
tion 2 grants broad, general power and authorizes the
district to exercise all power conferred by the Conserva-
tion Amendment to the Constitution, Article XVI, Sec. 59,
and by general law; such district to have "authority and
power of control and regulation over such storm and flood
waters of the Brazos River and its tributaries as may be
exercised by the State of Texas."  Section 3 provides as
follows:

        "'Sec. 3.  The Brazos River Conservation
        and Reclamation District shall have and be

recognized to exercise, in addition to all the general powers vested by virtue of the constitution and statutes in a governmental agency and body politic and corporate, for the greatest practicable measure of the conservation and beneficial utilization of storm, flood and unappropriated flow waters, the power of control and employment of such flood, storm and unappropriated flow waters of the said district in the manner and for the particular purposes hereinafter set forth.

"'(a) To provide through the only practical and legal means for the control and the coordination of the regulation of the waters of the watershed of the Brazos River and its tributary streams as a unit.

"' (b) To provide by adequate organization and administration for the preservation of the equitable rights of the people of the different sections of the watershed area in the beneficial use of storm, flood and unappropriated flow waters of the Brazos River and its tributary streams.

"' (c) For storing, controlling and conserving storm, flood and unappropriated flow waters of the Brazos River and its tributaries, and the prevention of the escape of any of such waters without the maximum of public service; for the prevention of devastation of lands from recurrent overflows, and the protection of life and property in such watershed area from uncontrolled flood waters.

"' (d) For the conservation of waters essential for the domestic uses of the people of the watershed of the Brazos River and its tributaries, including all necessary water supplies for cities and towns.

"'(e) For the irrigation of lands in the watershed of the Brazos River and its tributary streams where irrigation is required for agricultural production; and for the equitable distribution of storm, flood and

unappropriated flow waters to the regional potential requirements for all uses. All plans and all works provided by said districts, and as well, all works which may be provided under authority of said district should have primary regard to the necessary and potential needs for water, by or within the respective areas constituting the watershed of the Brazos River and its tributary streams.

"'(f) For the better encouragement and development of drainage systems and provisions for drainage of lands in the valleys of the Brazos River and its tributary streams needing drainage for profitable agricultural production; and drainage for other lands in the watershed area of the district requiring drainage for the most advantageous use.

"' (g) For the purpose of conservation of all soils against destructive erosion and thereby preventing the increased flood menace incident thereto.

"'(h) To control and make available for employment flood, storm and unappropriated flow waters in the development of commercial and industrial enterprises in all sections of the watershed area of the district.

"'(i) For the control, storing and employment of flood, storm and unappropriated flow waters in the development and distribution of hydro-electric power, where such use may be economically coordinated with other and superior uses, and subordinated to the uses declared by law to be superior.

"' (j) And for each and every purpose for which flood, storm and unappropriated flow waters when controlled and conserved may be utilized in the performance of a useful service as contemplated and authorized by the provisions of the constitution and the public policy therein declared.

"'(k) Nothing in this Act shall affect or repeal Articles 7496, 7500A of the 1925 Revised Statutes of 1925 as amended by Chapter

128 Acts of the Regular Session of the 42nd
Legislature."

In our Opinion No. V-319, addressed to you, we
considered the power of the Lower Colorado River Authority
to sell stored water for irrigation and manufacturing use
beyond its boundaries and concluded that its present Act
did not confer this power. The Brazos Act was cited in
the course of that opinion as being illustrative of a type
of act which contained no specific authorization for sale
of waters outside the boundaries of the district. It now
becomes necessary to construe this act to determine wheth-
er the legislative intent therein expressed in general
terms authorizes sales of water for use outside the dis-
trict under certain conditions.

The Brazos Act and Lower Colorado River Act dif-
fer in some very material respects.

Section 2 of each act sets forth certain general
powers. In Section 2 of the Brazos Act, there is no ex-
press limitation upon the general powers therein set out.
The powers there granted are cumulative, including all pow-
ers "contemplated and implied by the purposes of this pro-
vision of the Constitution, and as may be conferred by Gen-
eral Law, and the provisions of this Act." On the other
hand, Section 2 of the Colorado Act opens with the words
"Except as expressly limited by this Act", the District
shall have certain general powers. Section 3 of the Brazos
Act provides that the District shall have certain specified
particular powers "in addition to all the general powers
vested by virtue of the Constitution and statutes in a gov-
ernmental agency and body politic and corporate, for the
greatest practicable measure of the conservation and bene-
ficial utilization of the storm, flood and unappropriated
flow waters of said District in the manner and for the par-
ticular purposes hereinafter set forth."

By the terms of the Brazos Act, the particular
powers are granted in addition to the general powers. In
the Colorado Act, the general powers are limited by the par-
ticular powers. In the Colorado Act, there is no provision
corresponding to subsection (j) of Section 3 of the Brazos
Act. In the Colorado Act, there is no provision similar to
that of Section 4 of the Brazos Act, which provides that
the powers and duties of the District shall be "taken sub-
ject to all legislative declarations of public policy in
the maximum utilization of the storm, flood and unappropria-
ted flow waters of the Brazos River watershed for the pur-
poses for which the District is created, as expressed

and indicated in this Act, and subject to the continuing rights of supervision" by the Board of Water Engineers.

In the Colorado Act, there is a careful catalog of the things that may be done by the Colorado District "within the boundaries of the District" and other things that may be done "within or without the boundaries of the District." For instance, subsections (a) and (b) of Section 2 of the Colorado Act are as follows:

"(a)   to control, store and preserve, within the boundaries of the District, the waters of the Colorado River and its tributaries for any useful purpose, and to use, distribute and sell the same, within the boundaries of the District, for any such purpose;

"(b)   to develop and generate water power and electric energy within the boundaries of the District and to distribute and sell water power and electric energy, within or without the boundaries of the District."

That distinction as to what may be done within the District and beyond the boundaries of the District is carefully maintained through several of the succeeding subsections of Section 2 of the Colorado Act. No such distinction is maintained in the statute by which the Brazos District was created.

Article 7590, V.C.S., authorizes the Board of Water Engineers, upon application, to issue a permit after notice and hearing, to take waters from one watershed in this State into another watershed. Article 7471, V.C.S., determines the priorities to be given in the allotment and appropriation of water. The Brazos Act is a special act relating primarily to waters of that District, and it would control over the statutes above mentioned in so far as it is inconsistent with such statutes. 59 C.J. 936, Section 546. However, as relates to the flood, storm and unappropriated flow waters which may be controlled and conserved, we find that the Brazos Act is not inconsistent with the powers of the Board of Water Engineers as conferred by Articles 7472d, 7525, 7528, 7589, 7590 and 7591, V.C.S. In fact, Section 2 and Section 4 of the Act provide that the District's powers are subject to other Legislative Acts.

We accordingly hold that the Board of Directors of the Brazos River Conservation and Reclamation District in determining whether or not to enter into a contract for the sale of excess stored waters shall give primary regard to the necessary and potential needs for water for the irrigation of lands in the watershed of the Brazos River and its tributary streams for irrigation and domestic uses, and including all necessary water supplies for cities and towns within the District. The District would be authorized to sell for use outside of the watershed only surplus water if, as, and when available. After a determination on the part of the District to sell such surplus water for use outside of the watershed, it is necessary for the one who desires to remove the water from the watershed, whether it be the District or some other person, to apply to the Board of Water Engineers for a removal permit as authorized by Article 7590, V.C.S.

In passing "on the rights to be effected" by the issuance of such a permit, the Board of Water Engineers shall take into consideration, among others, the question of whether the waters which the District proposes to sell for removal outside the watershed is, in fact, surplus water, and the further question of the preference and priorities to which the residents of the watershed are entitled under Article 7471, V.C.S., and the provisions of the Act creating the Brazos River Conservation and Reclamation District.

The permit which the Board of Water Engineers may issue for the removal of water outside of the Brazos River watershed pursuant to Article 7590, V.C.S. is nothing more than a "removal permit" subject to the terms of the contract between the District and the purchaser of the water, and such permit should affirmatively so state.

## SUMMARY

The Brazos River Conservation and Reclamation District has authority to sell surplus stored waters for use outside the District. Before such water is moved outside the watershed of the Brazos River, the person or agency desiring to make such removal must obtain a removal permit from the Board of Water Engineers, after notice and hearing, in accordance with Article 7590, V. C. S. Acts 1929, 41st Legislature,

Second C. S., Special Laws, page 22, ch. 13, as amended, being Title 128, ch. 8, note, V. C. S. Arts. 7589, 7590 and 7591, V.C.S.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By *Fagan Dickson*

Fagan Dickson
First Assistant

FD/wb/1h

APPROVED:

*Price Daniel*
ATTORNEY GENERAL